HOSODA LAW GROUP
Attorneys at Law, A Law Corporation

LYLE S. HOSODA          3964-0
KOURTNEY H. WONG        10827-0
SPENCER J. LAU          11105-0
Three Waterfront Plaza, Suite 499
500 Ala Moana Boulevard
Honolulu, Hawai`i 96813
Telephone:   (808) 524-3700
Facsimile:   (808) 524-3838
Email:       LSH@hosodalaw.com
             KHW@hosodalaw.com
             SJL@hosodalaw.com

Attorneys for Plaintiff
PAUL N. APPLEGATE

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| PAUL N. APPLEGATE,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF KAUA`I; KAUA`I POLICE DEPARTMENT; KAUA`I POLICE COMMISSION; TODD G. RAYBUCK, individually and in his capacity as Chief of Police for the KAUA`I POLICE DEPARTMENT; and DOE DEFENDANTS 1-100,<br><br>Defendants. | Civil No. 1:21-cv-364 DKW-KJM<br><br>**FIRST AMENDED COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS** |

# FIRST AMENDED COMPLAINT

Plaintiff PAUL N. APPLEGATE ("Plaintiff"), by and through his attorneys, Hosoda Law Group, AAL, ALC, hereby asserts the following claims and causes of action against Defendants COUNTY OF KAUA`I; KAUA`I POLICE DEPARTMENT; KAUA`I POLICE COMMISSION; TODD G. RAYBUCK, individually and in his capacity as Chief of Police for the KAUA`I POLICE DEPARTMENT; and DOE DEFENDANTS 1-100 (collectively, "Defendants"), as follows:

## *Nature of Action*

1.     The unlawful employment practices alleged below were committed by Defendants within the County of Kaua`i, State of Hawai`i.

2.     Plaintiff is and was a resident of the County of Kaua`i, State of Hawai`i, at all relevant times herein.

3.     The Court has jurisdiction over this matter pursuant to 28 U.S.C.A. §§ 1331, 1343(a)(4), 2201, 2202, and 42 U.S.C.A. §§ 1981, 1983 Civil Rights Act of 1964, § 701 et. seq.  2000e-2(a)(2), and 2000e-5(g) and Hawai`i Revised Statutes, §§ 378-2 and 603-21.5(3).

4.     Venue is proper in this Court pursuant to 42 U.S.C.A. §§ 1981, 1983 Civil Rights Act of 1964, § 701 et. seq., 42 U.S.C.A. §§ 1391(b) and 42 U.S.C.A. § 2000e-2(a)(2) and 2000e-5(g), and because the claims for relief arose in the

District of Hawai`i and the named defendants reside and/or are committing the alleged unlawful employment practices within the District of Hawai`i.

5.    Plaintiff requests a jury trial on all issues pursuant to 42 U.S.C.A § 1981(a).

*Parties*

6.    Plaintiff is a 55-year old, part-Japanese male citizen that at all relevant times hereto is and was a resident of the County of Kaua`i, State of Hawai`i in the United States of America.  Plaintiff has been employed with the County of Kaua`i, Kaua`i Police Department ("KPD") since 2000.  He currently holds the position of Police Captain at KPD.

7.    Defendants COUNTY OF KAUA`I (the "County") and KAUA`I POLICE DEPARTMENT ("KPD") are and were at all times relevant hereto municipalities incorporated under the laws of the State of Hawai`i and United States of America.  The County and KPD are empowered by the Hawai`i Revised Statutes and the State and Federal government.  They are governmental entities engaged in industry affecting commerce, having one hundred or more employees in each of twenty or more calendar weeks, and have their principal places of business located in the County of Kaua`i, State of Hawai`i within the District of Hawai`i.

8.     Defendant KAUA`I POLICE COMMISSION ("KPC") is and was, at all relevant times hereto, established and conducting business pursuant to Section 11.04 of the Kaua`i County Charter.  KPC has its principal place of business in the County of Kaua`i.  KPC is empowered with appointing, supervising, and disciplining the Chief of Police for KPD.

9.     Defendant TODD G. RAYBUCK, individually and in his capacity as duly appointed Chief of Police for the KPD ("Chief Raybuck") is and was at all times relevant hereto a resident of the County of Kaua`i, State of Hawai`i within the District of Hawai`i.

10.    Doe Defendants are sued herein under fictitious names for the reason that their true names and identities are unknown to Plaintiff except that they may be connected in some manner with Defendants and may be agents, attorneys, servants, employees, employers, representatives, co-venturers, co-conspirators, associates, or independent contractors of Defendants and/or were in some manner responsible for the injuries or damages to Plaintiff and their true names, identities, capacities, activities and responsibilities are presently unknown to Plaintiff or his attorneys. Plaintiff prays leave to amend this Complaint to show the true names, capacities, activities and/or responsibilities when the same have been ascertained.

### *Factual Allegations*

11.    Plaintiff began working at KPD on October 9, 2000.

4

12.     After graduating from high school in Hawai`i, Plaintiff attended and earned a BA in Psychology in 1990 from the University of Hawai`i at Manoa. Plaintiff proceeded to get a further degree including a BBA in Business in 1995 from the University of Hawai`i at Hilo.

13.     Plaintiff also attended and completed the FBI National Academy, Class of #257 in 2014.

14.     Plaintiff has served as a Combat Engineer for the 411th Engineer Battalion for the U.S. Army Reserves from 1984 to 1990.

15.     Plaintiff served as a School Resource Officer for KPD from 2002 to 2008.

16.     Plaintiff received awards, honors, commendations, and promotions and ascended the ranks at KPD: White Collar Crime Detective Sergeant from 2008 to 2010; Community Relations Sergeant from 2010 to 2012; Lieutenant Office of the Chief of Police from 2012 to 2013; Captain of the Administrative & Technical Bureau from 2013 to 2016; Captain of the Patrol Services Bureau in 2017; Type 3 IMT Incident Commander 2017 to Present; and he was Acting Assistant Chief of the Patrol Services Bureau from September 2018 to June 2019; and Captain of the Investigative Bureau from June 2019 to present.

17.     Plaintiff has never received any complaints or adverse marks during his decorated career at KPD prior to the alleged incidents herein.

18.     On July 12, 2018, the County published a job listing for Chief of Police at KPD.

19.     Chief Raybuck submitted his application for the Chief of Police of KPD.

20.     Chief Raybuck worked for 27 years for the Las Vegas Metropolitan Police Department before he retired in 2019.

21.     Upon information and belief, Chief Raybuck had previously worked in Hawai`i, on Oahu back in 1987 through 1990 where he was stationed at Wheeler Air Force Base.

22.     On April 22, 2019, Chief Raybuck was appointed as KPD's Chief of Police.

23.     Shortly after Chief Raybuck was appointed as Chief, he requested that Plaintiff meet with him in his office.  During that meeting, Chief Raybuck asked Plaintiff whether he was "hapa."  For their first communication, Plaintiff was taken aback by the inquiry.  Notwithstanding the foregoing, Plaintiff responded in the affirmative.  Chief Raybuck then asked Plaintiff what kind of "hapa" he was, to which he responded that he was part Japanese.  Chief Raybuck then proceeded to explain to Plaintiff that a "bargirl" in Las Vegas taught him that "hapa" meant that someone was half Asian and half white.  The conversation left Plaintiff feeling awkward and uncomfortable.

6

24.     On or about May 17, 2019, Chief Raybuck circulated a letter to all KPD employees stating KPD's commitment to providing a safe and healthy working environment for its employees and informed them of mandatory harassment and discrimination training scheduled to begin in June 2019.  Notably, Chief Raybuck's letter stated, "KPD has a zero-tolerance policy against discrimination, sexual harassment, and assault and will look into and review every allegation, will not discredit or minimize reports, and will not ignore inappropriate conduct directed at [its] employees."  Thereafter, training commenced for KPD's employees, where emphasis was again placed on KPD's zero-tolerance policy on discrimination, harassment, and retaliation, and that any such complaints would be taken seriously with disciplinary action, as appropriate.

25.     On November 13, 2019, during a Command Staff meeting attended by Plaintiff, Assistant Chief ("A/C") Bryson Ponce, A/C Roy Asher, A/C Mark Begley, Captain Mark Ozaki, and Captain Rod Green, Chief Raybuck proceeded to tell a story about an Asian customer he once served at a fast-food restaurant.  Chief Raybuck imitated the slanted eyes of the Asian customer and mocked how the customer spoke.  Chief Raybuck's actions were not only deeply offensive to Plaintiff but were also in direct violation of KPD's zero-tolerance policy and training that occurred just months prior.  Others in attendance also expressed shock and offense and by their reaction, communicated disapproval to Chief Raybuck,

7

who then attempted to backtrack and explain that the incident occurred a long time ago and that he was a changed person.  Plaintiff discussed and complained about this incident to others at the Command Staff level that attended the meeting.  It appeared to Plaintiff that all agreed that Chief Raybuck's words and conduct were inappropriate and offensive to Plaintiff and others.

26.     On or about March 19, 2020, members of Command Staff received an email stating that key card access to Chief Raybuck's office had been suspended.  This was a significant change to past standard practices within KPD, which gave the appearance that Chief Raybuck had become distrustful of certain members of his staff.  Plaintiff believed that this act was directed at him.  Plaintiff inquired with Chief Raybuck directly regarding the change in key card access, to which he was told to "put [his] big boy pants on."

27.     On April 17, 2020, again against past policies and practices, Plaintiff was prohibited from attending a Vice Command Staff meeting between Chief Raybuck and Lieutenant James Miller.  This was in contravention to the KPD chain of command, as Lieutenant Miller reported directly to Plaintiff, and not Chief Raybuck.  Plaintiff believes that this was a discriminatory act by Chief Raybuck directed at Plaintiff because of his ethnicity.  Plaintiff was later informed by A/C Ponce that Plaintiff would not be permitted to attend any Vice Command Staff meetings anymore.  Plaintiff was never provided with an explanation as to

why he was being excluded from the meetings with those that reported directly to him, and these restrictions prevented Plaintiff from effectively performing his job and thus placed the community in danger.

28.     Following the events that transpired on April 17, 2020, Plaintiff continued to transmit memoranda to Chief Raybuck as he previously conducted in his normal course of business.  Contrary to their prior interactions, however, Chief Raybuck proceeded to ignore Plaintiff as well as the various memoranda from him. Among the memoranda that were authored by Plaintiff and ignored by Chief Raybuck was a request for an investigation into a workplace claim regarding KPD policies and procedures by one of Plaintiff's subordinates.  Further, Chief Raybuck accepted and started an investigation into similar complaints when presented by other officers and civilian personnel.  Plaintiff's reporting of the workplace claim is and was a "protected activity", and Chief Raybuck's failure to acknowledge and process the claim pursuant to the policies and procedures of the Defendants constitutes discrimination and retaliation.

29.     Shortly thereafter, on May 5, 2020, Plaintiff encountered Chief Raybuck in the administrative offices. Chief Raybuck proceeded to look at Plaintiff and he squinted his eyes in an exaggerated manner imitating slanted eyes and tilted his chin down as he and Plaintiff crossed paths.  Chief Raybuck proceeded to act this way on two separate occasions on May 5, 2020.  Plaintiff

interpreted Chief Raybuck's gestures of making slant eyes as discriminatory and harassment. Plaintiff immediately reported the incidents to A/C Ponce, who agreed that the gestures were discriminatory and inappropriate. Despite agreeing with Plaintiff, A/C Ponce did not proceed to submit or process a claim, discussing with Plaintiff that it would be Plaintiff's word against Chief Raybuck's word and that it was likely that making a claim would result in a dismissal of the claim as not being substantiated.

30.     On April 22, 2020, a job opening for A/C position for the Administrative and Technical Bureau ("ATB") was published. Upon seeing the posting, Plaintiff began to prepare to submit his application. He was the most qualified and experienced individual at KPD for the position. He was the longest-standing and most senior Captain at KPD. He was the only candidate to have worked at the ATB, and he had been there for 5½ years. Plaintiff had previous work experience in each of the KPD Bureaus as a Commander: Patrol Services Bureau, ATB, Investigative Services Bureau, and the Internal Affairs and Criminal Intelligence Units. As Captain of ATB, Plaintiff managed and oversaw all operational aspects of the ATB including the records section, training section, fiscal section, recruitment, facilities management, and community relations. He also has extensive experience in conducting complex procurements. He is the only Certified Type III IMT (Incident Management Team) Incident Commander at

KPD.

31.     Plaintiff was shattered when approximately one week prior to the vacancy being posted, it was announced internally that Captain Elliot Ke had already been selected for the position. Upon information and belief, Chief Raybuck selected Elliot Ke without going through the formal selection process in violation of the Defendants' policies, procedures, and past practices.

32.     Elliot Ke is a Caucasian male. While Plaintiff has high regard for Elliot Ke, Plaintiff believes that Plaintiff is and was significantly more qualified and experienced for the A/C position in ATB.  Plaintiff had 5½ years of prior experience at ATB and Elliot Ke had no prior experience in ATB, in addition to many other educational and experiential factors set forth hereinabove.

33.     Despite the announcement that Mr. Ke was already selected because Plaintiff felt that he was the best qualified for the position, he submitted his application on April 27, 2020.

34.     On May 14, 2020, Chief Raybuck conducted an interview of Plaintiff for the vacant A/C position.  Prior KPD practice called for two parties to conduct interviews together for chief positions; however, Chief Raybuck chose to conduct the interview on his own.  Plaintiff believed that this was a discriminatory act because all others had two interviewers, and he had already had many adverse interactions and made claims and complaints against Chief Raybuck.

35.     During the interview, Chief Raybuck continued to discriminate against Plaintiff, interrupting him and not providing Plaintiff with a fair opportunity to answer questions posed to him.  Further, Chief Raybuck never explained or set forth the procedure on how applicants would be selected for the A/C position, let alone the scoring criteria that he was subjected to.  As a result, Plaintiff was not provided an explanation as to his performance criteria following the interview—a standard practice for the interview process. Plaintiff complained directly to the Chief about the discriminatory treatment in the process.  Chief Raybuck failed, neglected, and refused to take the complaints seriously.

36.     On July 7, 2020, Plaintiff was summoned and interviewed by Defendants' Human Resources Department.  The investigator explained that a complaint had been made by a female KPD employee against Chief Raybuck for harassment and discrimination, and that she was interviewing Plaintiff as a potential witness.

37.     Consistent with policies and procedures, Plaintiff cooperated and answered the investigator's questions.  When asked if Plaintiff had witnessed any discrimination at KPD, Plaintiff reported all of the incidents of discrimination and harassment that he endured from Chief Raybuck until that point in time. (These specifically included all of the incidents and conduct hereinabove).  Plaintiff was compelled to and did tell the truth about these incidents at the request of the

investigator. The investigator acknowledged Plaintiff's facts and indicated that Chief Raybuck's conduct constituted discrimination and created a hostile work environment.

38. Despite both Plaintiff's claims and the female employee's claims being investigated and supported by evidence, in violation of Defendants' policies, procedures, and past practices, Chief Raybuck was not placed on any restrictions from KPD pending the investigations.

39. Following Plaintiff's July 7, 2020 interview, on July 28, 2020, Plaintiff received notice that he was not selected for the A/C position. Instead, Captain Ke was selected. Plaintiff believes that this was a discriminatory and retaliatory act.

40. On July 29, 2020, Plaintiff requested and met with Chief Raybuck to discuss the A/C selection process, criteria, and scoring, and Chief Raybuck again mocked the physical appearance of Japanese people to Plaintiff. Chief Raybuck proceeded to squint his eyes and repeatedly bow to Plaintiff, stating that he could not trust Japanese people because they do not always tell the truth. He then stated that the western culture "tells it like it is," whereas the Japanese culture says "yes, yes, yes" to your face even when they think the person's idea is stupid. These comments and gestures were directed to Plaintiff. They were highly offensive to Plaintiff.

13

41.    Plaintiff left the July 29, 2020 meeting believing that Chief Raybuck did not choose Plaintiff for the A/C position because he was part Japanese, and he did not like or trust Japanese people.

42.    Thereafter, Plaintiff filed complaints with the KPC, the County, and the Hawai`i Civil Rights Commission.

43.    On February 26, 2021, Plaintiff received correspondence from KPC finding cause that the events which occurred on November 13, 2019 and July 29, 2020 constituted a violation of the County's policies against discrimination.  The remaining allegations were found to be 1) lacking sufficient evidentiary support and/or 2) not in violation of the County's policies.

44.    The media ran stories about Chief Raybuck's discrimination and harassing conduct.  On or about April 16, 2021, Chief Raybuck issued a statement purporting to apologize but minimized his role in the incidents and blamed Plaintiff.

45.    Plaintiff submitted an appeal to the Civil Service Commission of his claims and complaints of racial discrimination and retaliation.

46.    Plaintiff made numerous complaints to his immediate supervisor A/C Ponce about Chief Raybuck.  A/C Ponce sympathized with Plaintiff but said that he could not do anything about it. A/C Ponce's failure to make and process these claims violates the Defendants' policies, procedures, and past practices.  This

constitutes discrimination and retaliation.

47.    As a result of the complaints against Chief Raybuck being found meritorious, Chief Raybuck was placed on leave by the County, KPD, and KPC from April 25, 2021 through May 1, 2021.

48.    After returning from leave, Chief Raybuck continued to discriminate against Plaintiff by deviating from policy and past practices with regard to transferring others within the department.  On June 22, 2021, Chief Raybuck denied Plaintiff's request for a detective to be transferred to Plaintiff's department when this had not been done to other similarly situated requests.

49.    Chief Raybuck discriminated against Plaintiff by denying Plaintiff's request to be temporarily assigned with pay to the A/C position while A/C Ponce was specially assigned to the Chief's Office.  Other similarly situated officers were temporarily assigned during the same period including Sergeant Overmyer, Sergeant Morita, Sergeant Guirao, and Sergeant Scribner.

50.    Chief Raybuck discriminated against Plaintiff when he informed some but not others at KPD at the administration level regarding the recruit graduation ceremony on June 24, 2021 including Plaintiff. (Only A/C Ke and Captain Mark Ozaki were aware of the ceremony)

51.    In July 2021, Chief Raybuck announced changes in his command staff which included the temporary assigning of Lieutenant Darren Rose on May 17,

2020 to the Chief's Office, the hiring on August 16, 2021 of Stan Olsen as Deputy Chief, and on July 25th, 2021 the transferring of Sergeant Kris Bryer to the Chief's office.  All of these individuals are Caucasian.

52.    In late July 25, 2021, Chief Raybuck announced that he was transferring Sergeant Jason Matsuoka out of the Chief's Office of Professional Standards and replacing him with Sergeant Kris Breyer.  Sergeant Matsuoka is Japanese.  Sergeant Bryer is Caucasian.

53.    On July 28, 2021, Plaintiff received a right to sue letter from the Hawai`i Civil Rights Commission and Equal Employment Opportunities Commission.

### *Causes of Action*

### Count I
### Racial Discrimination Against the County, KPD, KPC, and Chief Raybuck in his capacity as Chief of Police of KPD

54.    Plaintiff realleges and reincorporates by reference paragraphs 1 through 53 above with the same force and effect as fully set out in specific detail here.

55.    As a Japanese American, Plaintiff is in a racially protected class.

56.    Under 42 U.S.C.A. §1981, Civil Rights Act of 1964, and Hawai`i Revised Statutes, § 378-2, it is unlawful for an employer to discriminate against an individual on the basis of the individual's race, national origin, and/or ethnicity.

57.     At all times relevant hereto when doing his discriminatory acts and conduct, he was acting in the course and scope of his employment as the police chief of KPD.  As such, Defendants County, KPD, and KPC were directly and otherwise responsible for Chief Raybuck's actions and conduct.

58.     Chief Raybuck's actions and conduct both verbal and physical were disparate and discriminatory and were because of Plaintiff's race, national origin, and/or ethnicity.

59.     The Defendants' conduct was not welcome and Plaintiff made it known that it was not welcome and formally and otherwise complained about said conduct.

60.     The Defendants' conduct was sufficiently severe and/or pervasive to alter the conditions of Plaintiff's employment and created an abusive and hostile working environment.

61.     The Defendants' actions and conduct directly and proximately caused harm and damages to Plaintiff.

62.     Plaintiff has been damaged in an amount to be proven at trial.

63.     On July 28, 2021, Plaintiff received a right to sue letter from the Hawai`i Civil Rights Commission and Equal Employment Opportunities Commission.

17

## Count II
## 42 U.S.C.A. §1983 Against the County, KPD, KPC, and Chief Raybuck in his capacity as Chief of Police of KPD

64.     Plaintiff realleges and reincorporates by reference paragraphs 1 through 63 above with the same force and effect as fully set out in specific detail here.

65.     As a Japanese American, Plaintiff is in a racially protected class.

66.     Under 42 U.S.C.A. §1983, Civil Rights Act of 1964 and Hawai`i Revised Statutes, § 378-2, it is unlawful for an employer to use his/her/its color of office to discriminate against an individual on the basis of the individual's race, national origin, and/or ethnicity.

67.     At all times relevant hereto when doing his discriminatory acts and conduct, he was acting in the course and scope of his employment as the police chief of KPD and under the color of the office of the Chief of KPD.  As such, Defendants County, KPD, and KPC were directly and otherwise responsible for Chief Raybuck's actions and conduct.

68.     Chief Raybuck's actions and conduct both verbal and physical were disparate and discriminatory and were because of Plaintiff's race, national origin, and/or ethnicity.

69.     The conduct deprived Plaintiff of his rights, privileges, and immunities protected by the Constitution or the laws of the United States.

70. The Defendants' actions and conduct directly and proximately caused harm and damages to Plaintiff.

71. Plaintiff has been damaged in an amount to be proven at trial.

**Count III**
**Retaliation in Violation of Title VII, U.S.C.A. § 2000e-3(a) and**
**HAWAI`I REVISED STATUTES §§ 368 and 378-2(2)**
**(The County, KPD, KPC, and Chief Raybuck in his capacity as Chief of Police**
**of KPD)**

72. Plaintiff realleges and reincorporates by reference paragraphs 1 through 71 above with the same force and effect as fully set out in specific detail here.

73. Defendants County, KPD, and KPC, by and through their agents, including but not limited to Chief Raybuck, unlawfully retaliated against Plaintiff for cooperating, assisting, supporting, and reporting a female KPD officer's complaint of sex discrimination, harassment, and hostile work environment against Chief Raybuck and the Defendants, and reporting his own claim against Chief Raybuck for discrimination, harassment, and retaliation.

74. This retaliation was done maliciously, willfully, and with reckless disregard for the rights of Plaintiff.

75. Defendants failed to provide Plaintiff with employment conditions where he could safely work, free from illegal discrimination, thereby creating a

hostile work environment.

76.     Defendants failed to take prompt and effective remedial action to prevent or put an end to the discrimination and retaliation as described hereinabove.

77.     As a result of the foregoing acts, omissions, and conduct, Plaintiff has suffered extreme anguish, pain, emotional distress, humiliation, damage to his reputation, loss of income, and other general and special damages in amounts to be proven at trial, and is entitled to all equitable and legal remedies and damages, including but not limited to, all relief as allowed under Title VII and Hawai`i Revised Statutes §§ 368 and 378.

78.     Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged, and this suit for back pay, declaratory judgment, injunction relief, and compensatory and punitive damages is his only means of securing adequate relief.

79.     Plaintiff is now suffering and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth above unless Defendants are enjoined by this Court, as requested below.

## Count IV
## Aiding and Abetting Retaliation in Violation of Hawai`i Revised Statutes §§ 368 and 378-2(3)
## (All Defendants)

80.     Plaintiff realleges and reincorporates by reference paragraphs 1

through 79 above with the same force and effect as fully set out in specific detail

here.

81.     Hawai`i Revised Statutes § 378-2(3) provides in pertinent part:

It shall be an unlawful discriminatory practice:

(3) For any person whether an employer, employee,
or not, to aid, abet, incite, compel, or coerce the doing of
any discriminatory practices forbidden by this part, or
attempt to do so[.]

By reason of the acts, omissions, and conduct hereinabove alleged, Defendants

aided, abetted, incited, compelled, and/or coerced the doing of the aforesaid

discriminatory practices in violation of Hawai`i Revised Statutes § 378-2(a)(3).

Chief Raybuck is individually liable for his intentional, illegal conduct pursuant to

Hawai`i law.

82.     As a consequence of the foregoing aiding and abetting and wrongful

conduct by the Defendants, Plaintiff has been subjected to a hostile work

environment, suffered extreme anguish, pain, emotional distress, humiliation,

damage to his reputation, loss of income, and other general and special damages in

amounts to be proven at trial, and is entitled to all equitable and legal remedies and

damages, including but not limited to all relief as allowed under Hawai`i Revised Statutes §§ 368 and 378.

83.     As a consequence of the foregoing aiding and abetting by the Defendants, Chief Raybuck is also individually liable for Plaintiff's damages.

**Count V**
**Violation of Whistleblower Protection Act**
**(The County, KPD, KPC, and Chief Raybuck in his capacity as Chief of Police of KPD)**

84.     Plaintiff realleges and reincorporates by reference paragraphs 1 through 83 above with the same force and effect as fully set out in specific detail here.

85.     Plaintiff engaged in protected conduct as defined in Hawai`i's Whistleblowers' Protection Act HRS § 378-61 et seq. ("WPA").

86.     Plaintiff twice reported claims of female subordinate employees to KPD, cooperated in the Human Resource Department's investigation of hostile work environment claim against Chief Raybuck, and made several of his own complaints and claims against Chief Raybuck.

87.     Each of these acts and complaints constituted reports of a violation of law or a suspected violation of law consistent with the WPA.

88.     Once Plaintiff made these reports or was participating in the investigation of the same, Plaintiff was engaged in a protected activity.

89.     Defendants took numerous adverse actions against Plaintiff by

threatening, retaliating, and/or otherwise discriminating against Plaintiff because Plaintiff engaged in the protected conduct under the WPA.

90.     The conduct of the Defendants was in violation of the WPA and the conduct remains ongoing.

91.     As a result thereof, Plaintiff is entitled to the statutory remedies under the WPA.

**Count VI**
**Intentional Infliction of Emotional Distress**
**(The County, KPD, KPC, and Chief Raybuck in his capacity as Chief of Police of KPD )**

92.     Plaintiff realleges and reincorporates by reference paragraphs 1 through 91 with the same force and effect as fully set out in specific detail here.

93.     All Defendants herein named have engaged in extreme and outrageous behavior towards Plaintiff.  The aforementioned actions constitute a pattern of illegal conduct that remains ongoing.  Defendants' actions as described above were done with malice and with the intent to cause, or the knowledge that it would cause, severe emotional and mental distress to Plaintiff.

94.     As a result thereof, Plaintiff has suffered and continues to suffer severe emotional and mental distress, thereby entitling Plaintiff to relief related thereto, as stated herein, including an award of special, general, and punitive damages.

**Count VII**
**Negligence/Negligent Retention, Negligent Hiring, and/or Supervision**
**(The County, KPD, and KPC)**

95.     Plaintiff repeats, re-alleges, and incorporates herein by reference, all of the allegations contained in paragraphs 1-94 of this Complaint, as though fully set forth herein.

*Negligence/Negligent Retention*

96.     The County, KPD, and KPC owed a duty to Plaintiff to, among other things, hire their employees, agents, and representatives, including Chief Raybuck, with due diligence, to train them on the County's Policy Against Discrimination, Harassment, and Retaliation, and to discipline or terminate employment when their employees are acting harmfully, wrongfully, or tortiously.

97.     The County, KPD, and KPC breached their duty to Plaintiff by retaining Chief Raybuck either a) without conducting due diligence on his background; or b) conducting due diligence on his background and retaining him as Chief of Police.

98.     Further, following the County's and KPC's investigation into the present matters involving Plaintiff in which they found that Chief Raybuck did act in a discriminatory manner towards Plaintiff, Chief Raybuck remained employed with KPD as the Chief of Police.

99.     As a result of that breach, the County, KPD, and KPC caused injuries

24

and damages to Plaintiff.

100.   The County, KPD, and KPC have wrongfully retained Chief Raybuck as Chief of Police with KPD after they were put on notice of his misconduct as described herein.

101.   Plaintiff has and continues to incur injuries and damages after the County, KPD, and KPC were put on notice of Chief Raybuck's misconduct and failed to take appropriate and necessary action to redress and remedy the same which caused Plaintiff emotional stress and other general and specific damages.

102.   Those injuries and damages continue to mount with each day that passes in amounts to be proven at the time of trial.

## *Negligent Supervision*

103.   The County, KPD, and KPC's failure to establish and enforce supervisory policies and training for its Chief of Police proximately caused Plaintiff's injuries as described herein.

104.   Plaintiff has sustained substantial damages as a direct and proximate result of the County, KPD, and KPC's negligent training and/or supervision of Chief Raybuck in amounts to be proven at trial.

## ***Prayer for Relief***

WHEREFORE, Plaintiff prays for judgment in amounts in excess of the minimum jurisdictional requirements of this Court against the above-named

defendants, as follows:

1.      General, special, and punitive damages which will be proven at trial;

2.      Declaratory and injunctive relief;

3.      Attorneys' fees and costs;

4.      Prejudgment interest from the date of the first unlawful act by any defendant herein named; and

5.      For such other and further relief at law or equity as the Court may deem just and proper.

DATED:  Honolulu, Hawai`i, November 5, 2021.

/s/ Lyle S. Hosoda
LYLE S. HOSODA
KOURTNEY H. WONG
SPENCER J. LAU

Attorneys for Plaintiff
PAUL N. APPLEGATE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| PAUL N. APPLEGATE,<br><br>      Plaintiff,<br><br>vs.<br><br>COUNTY OF KAUA`I; KAUA`I POLICE DEPARTMENT; KAUA`I POLICE COMMISSION; TODD G. RAYBUCK, individually and in his capacity as Chief of Police for the KAUA`I POLICE DEPARTMENT; and DOE DEFENDANTS 1-100,<br><br>      Defendants. | Civil No. 1:21-cv-364 DKW-KJM (Other Civil Action)<br><br>**DEMAND FOR JURY TRIAL** |

## **DEMAND FOR JURY TRIAL**

      Plaintiff PAUL N. APPLEGATE, by and through his undersigned counsel, demands a jury trial of all issues triable of right to a jury in the above-captioned matter.  This Demand for Jury Trial is made pursuant to Rule 38 of the Hawai`i Rules of Civil Procedure.

      DATED:  Honolulu, Hawai`i, November 5, 2021.

                /s/ Lyle S. Hosoda
                LYLE S. HOSODA
                KOURTNEY H. WONG
                SPENCER J. LAU

                Attorneys for Plaintiff
                PAUL N. APPLEGATE

HID 440 (Rev. 12/09)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Hawaii

| | |
|---|---|
| PAUL N. APPLEGATE | ) |
| _____ | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No.   1:21-cv-364 DKW-KJM |
| COUNTY OF KAUA`I, et al. | ) |
| _____ | ) |
| *Defendant* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

COUNTY OF KAUA'I
4444 Rice Street, #220
Lihue, Hawai'i 96766

COUNTY OF KAUA'I,
KAUA'I POLICE DEPARTMENT
3990 Kaana Street, #200
Lihue, Hawai'i 96766

KAUA'I POLICE COMMISSION
4444 Rice Street, #300
Lihue, Hawai'i 96766

TODD G. RAYBUCK, individually and
in his capacity as Chief of Police for the
KAUA'I POLICE DEPARTMENT
3990 Kaana Street, #200
Lihue, Hawai'i 96766

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Hosoda Law Group, AAL, ALC
> 500 Ala Moana Boulevard, Suite 3-499
> Honolulu, Hawaii 96813

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 12/09)  Summons in a Civil Action (Page 2)

Civil Action No.   1:21-cv-364

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐  I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐  I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐  I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐  I returned the summons unexecuted because _____ ; or

❐  Other *(specify):*

_____ .


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .


I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                                   *Server's signature*

                                                         _____
                                                                   *Printed name and title*

                                                         _____
                                                                   *Server's address*


Additional information regarding attempted service, etc: